## APPEAL OF DANIEL N. KEMMERER ET AL.

### [George Brooke v. D. N. and Henry Kemmerer.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 4, 1889—Decided April 8, 1889.
[To be reported.]

(a) The petition of the defendants to open a judgment entered by confession, and for an issue, averred that as appeared upon the face of the bond one of the petitioners was but a surety for the debt secured, and that a mortgage upon the debtor's land as well as upon that of the surety had been executed as a further security for the payment of the bond;

(b) That after said mortgage was executed, the defendants had conveyed their lands to a trustee, to sell and "pay the liens in the order of their priority;" that the trustee had sold lands of the principal and the judgment plaintiff had released the lien of his mortgage therefrom and suffered the purchase money to be applied to a subsequent lien.

1. The averments of the petition being supported by the records and the testimony taken, a prima facie case was presented which entitled the petitioners to have execution upon the judgment stayed, the judgment opened and an issue awarded to determine how much, if anything, was due upon the judgment.

Before Paxson, C. J., Sterrett, Williams, McCollum and Mitchell, JJ.

No. 362 January Term 1888, Sup. Ct.; court below, No. 3 September Term 1886, C. P.

On September 13, 1886, judgment was entered to the number and term of the court below, noted above, in favor of George

Brooke against Daniel N. Kemmerer and Henry Kemmerer, upon a bond dated May 12, 1882, for $8,000 payable in three years. A fieri facias being issued the same day, a levy was made by the sheriff on a parcel of land in Alsace and Oley townships, containing 43 acres, as of the estate of Daniel N. and Henry Kemmerer. An inquisition was then held, upon notice to the defendants, the land condemned, the sheriff's return approved, and on November 16, 1886, a venditioni exponas issued.

On December 10, 1886, the defendants presented a petition representing:

That they reside in Alsace township, Berks county, Pa. That heretofore, on or about May 12, 1882, the said Daniel N. Kemmerer was the individual owner of a large quantity of real estate, located in the county of Berks, consisting of messuages, tenements and tracts of farm land and some woodland. Said Daniel N. and Henry Kemmerer also owned together an undivided messuage, tenement and tract of land, situated in Alsace township, known as the Homestead tract, containing 82 acres, 114 perches.

On said May 12, 1882, said Daniel N. Kemmerer obtained a loan of $30,000, through Kendall Brothers, real estate brokers, of Reading, Pa., for which a mortgage was given by him and the said Henry Kemmerer to George Brooke, Annie M. Brooke, widow of Edward Brooke, and George Brooke, guardian of the minor children of Edward Brooke, securing the payment of said sum with interest in three years by virtue of three bonds and warrants as follows, to wit:

One bond and warrant to Annie M. Brooke, widow, for the payment of $7,000, etc.; one bond and warrant to George Brooke, guardian of Edward Brooke's minor children, in the sum of $15,000, etc., and one bond and warrant to George Brooke, in the sum of $8,000, etc. The payment of said sums was secured in said mortgage on all the real estate aforesaid owned by said Daniel N. Kemmerer and therein particularly described, and on the said Homestead premises of 82 acres, 114 perches, also, owned by said Daniel N. Kemmerer and Henry Kemmerer in common. Said Henry Kemmerer joined in the said mortgage as a mortgagor, pledging his interest in said Homestead premises, as a bail and further security for the pay-

ment of said $30,000 so loaned to said Daniel N. Kemmerer. In the warrant filed in the prothonotary's office, as part of the said bond held by said George Brooke against these petitioners, obligors therein and mortgagors as aforesaid, for the payment of said sum of $8,000, entered to No. 3 September Term 1886, is contained the following proviso, reservation and stipulation:

"The said Henry Kemmerer joins in this warrant and in the accompanying bond and mortgage in order that his interest in the Homestead of 82 acres, 114 perches, in Alsace township, may be liable for the payment of the aforesaid principal sum of $8,000, but it is understood that this warrant is to be inoperative as to the other estate of the said Henry Kemmerer."

Said mortgage was duly entered of record in the recorder's office of Berks county, on said May 12, 1882, in Mortgage Book 46, p. 413, and said warrant accompanying the bond secured by said mortgage was quite lately duly filed in the prothonotary's office aforesaid, on September 13, 1886, to No. 3 September Term 1886, as a confession of judgment therein for said amount against both these petitioners.

At the time of the filing of said warrant it will appear, by the affidavit of said George Brooke, plaintiff therein, attached thereto, that the aforesaid bond of $7,000, held by said Annie M. Brooke, has been fully paid; that the greater part of the other bond, held by said George Brooke, guardian, etc., has also been paid, and that no part of the principal of said $8,000 bond, with interest from November 1, 1884, has been paid, and that same is now due and payable.

That heretofore, on May 30, 1884, said petitioners were induced, by false and fraudulent representations, as they allege, to convey all their real estate, mentioned and described in the aforesaid mortgage, including the said Homestead premises and all their personal estate, to one Joseph V. Kendall for a nominal consideration of one dollar, in trust, among other things, to sell and dispose of said real and personal estate, etc., pay the liens in order of their priority, etc.

Said Joseph V. Kendall afterwards sold of said real estate and personal, for a large sum of money, to wit, altogether amounting to $45,000 or more. The aforesaid mortgage, entered in Mortgage Book 46, p. 413, was the first lien on all of said real estate therein mentioned and described. As the said

Kendall, trustee, would sell a portion thereof to the different purchasers, he, the said George Brooke, lien creditor as aforesaid, would release the lien of his said mortgage securing the aforesaid land, the said Kendall, trustee, thereupon securing the full purchase money. Subsequently said Kendall, trustee, sold a large and valuable portion of said real estate to one George W. Harrison, for the sum of $21,950, as appears by the deed of said Kendall and wife, to said Harrison, dated April 25, 1885, recorded Deed Book 161, p. 587. To said deed is appended the receipt of said Kendall for said consideration. Petitioners are informed and believe same to be true, that throughout the whole of said trust transactions of said Kendall, he, the said George Brooke, recognized the action of said Kendall, trustee; co-operated with him in enabling him to make title to purchasers of said land by releasing his lien of mortgage, as aforesaid, and permitted him, said Kendall, trustee, to pay some of the money so received thereby to different parties, lien creditors, not superior to his lien. He was also cognizant of the fact that said Kendall, trustee, had so as aforesaid sold real estate to said Harrison, and permitted same without objection, with the understanding and agreement, as petitioners are led to believe, that said transaction was for his benefit, that his said lien claim would be paid out of the proceeds of said transaction, and well knew that said fund would be more than sufficient to pay him his lien claim in full; yet, notwithstanding the aforesaid, and the fact that said Kendall had so as aforesaid sold real estate and received more than sufficient money to pay his said lien and claim, he, the said Brooke, on September 13, 1886, caused his said bond and warrant to be entered in the Court of Common Pleas, to No. 3 September Term 1886, J. D., in the amount of $8,000 with interest from November 1, 1884, thus making it an additional lien with said mortgage against all the real estate owned and possessed and claimed by the said Daniel N. Kemmerer and Henry Kemmerer.

On said September 13, 1886, said George Brooke caused a writ of fieri facias to be issued out of your said court, based on said judgment lien, and caused the sheriff to levy, by virtue thereof, on the aforesaid Homestead premises of 43 acres, 114 perches, in Alsace township aforesaid. At the time of the issuing of said fieri facias said Daniel Kemmerer had in his

possession and ownership, in and about said premises, a large quantity of valuable personal property, goods and chattels, etc. The sheriff neglected and failed to serve said writ of fieri facias on either of said Kemmerers; in fact did not go on the premises to seek for any personalty whereon to levy, but made return thereto as follows: "The defendants, having no goods or chattels whereof I could cause the money within mentioned, or any part, to be levied, on September 14, 1886, I levied on the within described real estate," etc., etc. Petitioners aver that from inquiry made of the sheriff and his deputy, since the aforesaid return made, and their refusal to give any information regarding the same, that the said sheriff made his aforesaid return and levy on real estate by direction of the attorneys of said George Brooke. Subsequently a writ of venditioni exponas, issued to No. 12 December Term 1886, E. D., and said Homestead premises of 43 acres, 114 perches, has been advertised to be sold at sheriff's sale on December 11, 1886.

. Petitioners thus showing that the said George Brooke . . . . . in the face of the foregoing facts, by the entering of his lien of judgment, No. 3 September Term 1886, J. D., and his subsequent proceedings by fieri facias venditioni exponas and sheriff's sale, is endeavoring to obtain the full amount of his said claim of $8,000 with interest from November 1, 1884, by a sale of the said Homestead premises of 43 acres, 114 perches, whereof the said Henry Kemmerer is half owner, being but a portion of the real estate covered by the said mortgage lien of $30,000, and but a portion of the real estate as aforesaid conveyed to said Kendall, trustee, for the purposes aforesaid, and but a portion of said real estate remaining unreleased from the lien of said mortgage and so as aforesaid sold by said Kendall, trustee, to said Harrison, with the knowledge, consent of and understanding with said George Brooke that the same was so sold and he should be paid out of the proceeds.

Petitioners aver that they verily believe the said Joseph V. Kendall, trustee, has realized sufficient funds under said trust to fully pay the said George Brooke his full claim and interest, and that upon his rendering a true statement and account, such will appear to be the fact. That he has been required to so account by equity proceedings, instituted in your court,

Opinion of Court below.

sitting in equity, September 7, 1886, but so far he has not accounted. That under the circumstances and the foregoing facts and allegations it would be against right, equity and conscience to permit the said George Brooke to proceed in the premises.

Petitioners, therefore . . . . . pray your honor to grant them a rule to show cause why the said judgment, No. 3 September Term, 1886, J. D., should not be opened and these petitioners be let in to make a defence thereto; to stay said venditioni exponas proceedings; and in the meantime to grant such further and equitable relief as to your honor may be deemed proper and necessary.

The venditioni exponas was stayed for the time being, and a rule was granted upon the foregoing petition.

Depositions were then taken on the part of the petitioners. George W. Harrison, being called, testified in substance, that he did not pay to Mr. Kendall any part of the $21,950, the consideration of the conveyance of April 25, 1885; that Mr. Kendall, in offering to convey the property to him did it with a view, as he said, of expediting the settlement of the affairs of the Kemmerers; that Mr. Kendall "added that, in the present condition of affairs, at that time, he could not dispose of the properties, as he found Daniel Kemmerer to be very troublesome, interfering very materially with the sale, so much so that he could not find a purchaser, and for the benefit of all concerned he thought it for the best to have the properties deeded to another party, sold to another party, and from them conveyed to such parties as he could sell to afterwards." Other testimony taken is sufficiently indicated in the opinion of the court below, and in the opinion of this court.

On January 25, 1888, after argument, the court, ERMENTROUT, J., filed an opinion which, after stating the matters connected with the execution and delivery of the mortgage and bonds, the recording of the mortgage, the entry of judgment on the bond in favor of the plaintiff, and the issuance of the writs from the judgment, etc., proceeded:

The petition might well be dismissed as coming too late without any discussion of its merits.

By the terms of the bond the Homestead was liable for the debt, and is, primarily, the fund to which other creditors of defendants could compel Brooke to first resort for payment. What then is the contention of defendants, as shown by the depositions and documentary evidence submitted to the court? Many of the material allegations in defendant's petition are not sustained by the facts. The court can find no evidence from which defendant's first allegation, to wit: of fraud, is maintainable, or anything reflecting upon the character of the gentlemen assailed. These very persons have been made the defendant's witnesses and they are bound by their testimony. Neither fraud nor want of consideration appears; even Daniel Kemmerer in his deposition does not swear to any fraud. The next contention is that on May 30, 1884, Daniel and Henry Kemmerer made a deed to Joseph V. Kendall for various properties described in the mortgage, as well as for all their personal property, and that at the same time Kendall made a declaration of trust to sell and dispose of the same for the benefit of creditors as therein specified; that, therefore, the transaction was a deed of assignment for the benefit of creditors and that, the bond and warrant having been entered subsequently to such deed of assignment, no execution thereon was permissible. Whilst we are of opinion, under the authority of Johnson's App., 103 Pa. 376; Watson v. Smith, 12 Pa. 164; Beans v. Bullitt, 57 Pa. 229, that the transaction was, in legal effect, a deed of assignment for the benefit of creditors, and whilst the ordinary entry of judgment upon a bond, under such circumstances, confers no right of execution, the fact that this bond and warrant are secured by mortgage, duly recorded previous to such deed of assignment, has been overlooked. The lien of said judgment relates back to the date of the mortgage, and, therefore, the lien being prior to the date of assignment for benefit of creditors, the right to issue execution must prevail. In the case of McCall v. Lenox, 9 S. & R. 302, it was held that " if a bond and warrant of attorney are given accompanying a mortgage, a sale of the land under a fieri facias and venditioni exponas, issued on the judgment entered upon the warrant, avoids a lease made by the mortgagor after the mortgage, but before the entry of the judgment on the warrant. In the case of Bury v. Sieber, 5

Pa. 431, a deed of conveyance made part of the purchase money a lien upon the land. A bond was issued for the same amount, a reference to the bond appearing in the deed. Upon this bond judgment was obtained and the premises sold at sheriff's sale. It was held that the purchaser at sheriff's sale took a clear title, notwithstanding that the original purchaser sold the land and the judgment was not obtained until after his so selling, because the lien of the judgment related to the date of the lien in the deed. So, too, in the case of Commonwealth v. Wilson, 34 Pa. 68, it was held that there is a clear union between the mortgage and the judgment on the bond, and the lien of the judgment necessarily relates back to the date of the mortgage. The right of the execution creditor to sell, cannot be defeated upon this ground.

The next contention is that the assignee, Kendall, sold a few tracts of land, and that Brooke, at his request, released the premises sold from the general lien of the $30,000 mortgage. The answer is that by the declaration of trust the actions of Kendall in the settlement and payment of claims were expressly made binding upon the grantors. A mortgage creditor has a right to execute such releases. The release prejudiced no one ; the proceeds of the sale were mainly paid over on account of the bonds mentioned in the $30,000 mortgage, and, to make the sales and the title clear of incumbrance, Kendall had to pay part of a second mortgage held by Kutz, and also a dower. The moneys Brooke received paid Mrs. Brooke in full and the guardian bond in part. The transactions complained of were strictly necessary in carrying out the trust. It does not lie in the mouths of the defendants to find any fault on this account.

The next contention is that on April 25, 1885, Kendall conveyed to George W. Harrison, by deed, all the assigned estate then remaining unsold, for the alleged consideration of $21,900, which covered the sum total of the liens unpaid, and that because Brooke knew of the transaction and did not object, his remedy is against the assignee. But the evidence shows that no consideration passed for this deed, and that Kendall found great difficulty in making sales on account of Kemmerer's interference with him ; that to facilitate the trust the property was deeded to Harrison, and a sale could be made by Kendall ;

Harrison was to transfer to purchasers; that up to the time of the present proceedings but $3,300 worth of property had been sold, and the money was properly appropriated in carrying out the trust. That more property was not sold seems due to the opposition of Kemmerer, who pronounces the deed a fraud and interferes with the carrying out of the trust. Defendants ought not to be permitted to impeach this deed, and Daniel Kemmerer does in his testimony and at the same time charge the assignee with the proceeds of the sale, and asks creditors to claim the fund. Nowhere is it shown by the depositions that plaintiff has been hard, or that he assented to any agreement to yield his right of lien, or execution, or look to anything but the land for payment, and the evidence shows that all the land will be needed to pay the debts of the grantors.

The defendants allege that even the deed of May 30, 1884, was obtained by fraudulent representation. If this were so, and the deed set aside, the whole contention of the defendants would fall, and the right of execution by plaintiffs could not be questioned.

All the facts submitted fail to show any ground for interference. We, therefore, discharge the rule, and permit plaintiff to issue the necessary process of execution.

The defendants then took this appeal and also a writ of certiorari, but declined to enter into recognizance in double the amount of the judgment. The plaintiff then caused an alias venditioni exponas to be issued, whereon a sale of the land was had, the proceeds being ordered into court to await the determination of this appeal. Specifications of error were filed, in this court, to the order discharging the rule to show cause why the judgment complained of should not be opened, and the defendants be let in to make a defence thereto, etc.

*Mr. D. E. Schroeder* (with him *Mr. B. Y. Shearer*), for the appellants:

1. Whilst the law secures to the creditor his just demand, and sequestrates the debtor's property to satisfy it, it still sedulously guards the debtor's interests in all the various steps leading to the sale of his property. The unfortunate debtor is not beneath its protection. It will not tolerate the slightest

undue advantage over him, even by pursuing the strict forms of law or positive rules: Story's Eq. J., § 239. A court of equity justly scrutinizes the conduct of a party placed by the law in a position where he possesses the power to sacrifice the interests of another which may defy detection, and stands ready to afford relief on very slight evidences of unfair dealing, whether it is made necessary by moral turpitude or only by a mistaken estimate of another's rights: King v. Platt, 37 N. Y. 160 ; and see Stevens v. Cooper, 1 Johns. Ch. 430.

2. The act of April 2, 1822, 7 Sm. L. 551, gives to mortgagees the right to release portions of the mortgaged premises, but if such release be made, the proceedings to recover on the mortgaged premises unreleased, must be by scire facias under which the mortgagors have the right to defend. The act makes no provision as to the effect of a release, leaving that to be decided by the established principles of law and equity, according to which the effect of the release must depend upon the circumstances of the case: Taylor v. Maris, 5 R. 57. By releasing his mortgage and permitting the purchase money realized from the land released to be paid upon other liens, the plaintiff did a wrong to Henry Kemmerer, the surety mortgagor, and released him and his mortgaged property from any further liability: Holt v. Bodey, 18 Pa. 207 ; Shepherd's App., 2 Gr. 402 ; Donley v. Hays, 17 S. & R. 400 ; Hancock's App., 34 Pa. 155.

*Mr. Jefferson Snyder*, for the appellee, filed no brief.

OPINION, MR. JUSTICE MITCHELL:

The facts set forth in the petition of appellants imperatively required that the execution should be stayed and the judgment opened.

As to Henry Kemmerer the case is so plain that it is difficult to state any reasons more forcible than the uncontested facts as they stand on the record. Henry mortgaged his interest in a certain tract of land called the Homestead, as security for a debt of his brother Daniel to the plaintiff, Brooke. The mortgage was a joint mortgage by Daniel and Henry covering several tracts belonging to Daniel and, as already said, the Homestead of Henry. But Henry personally owed nothing to

Brooke, and the bond to Brooke which accompanied the mortgage expressly stipulated that Henry joined in it and the mortgage, solely that the Homestead should be security for the loan to Daniel. Subsequently Henry and Daniel conveyed their property to a trustee to sell, and pay liens. The trustee sold several parcels of Daniel's land, and as he did so, the plaintiff Brooke released the lien of his mortgage, and allowed the proceeds of the sales to be paid to the other liens, none of which were prior to his, and one at least was admittedly posterior. By this conduct he discharged the land of Henry from its obligation to him.

But on the facts averred in the petition Daniel was equally entitled to relief. As already said he and Henry had conveyed all their real estate to one Kendall in trust to sell. Whether the instrument was technically an assignment for the benefit of creditors, it is not material at present to inquire. It was a trust to sell, " pay the liens in the order of their priority," settle other liabilities, and pay over any balance remaining to the grantors. Under it Kendall was a trustee for the Kemmerers and his duty under the very terms of the instrument, was to pay the liens in the order of their priority. Instead of doing so, he sold from time to time, paid liens out of their order, and plaintiff not only permitted but actively assisted him in so doing by releasing his first lien on the lands sold, and yet allowing the proceeds to go to other liens none of which were superior to his and at least one inferior. It is alleged in the petition, and the depositions seem to sustain the allegation, that without touching Henry's Homestead and also leaving untouched portions of Daniel's land, enough money had been realized by sales of other parts to pay plaintiff's lien as well as the others which stood upon an equal footing with it, and that upon an accounting by Kendall it would appear that plaintiff had been paid in full. Kendall did not account nor does he seem to have given any information. On the contrary he made a fraudulent and colorable sale to one Harrison, with a nominal consideration of $21,950, but in reality without the passage of a cent of money, for the very purpose of preventing the owners of the land from learning what he, their trustee, was doing with it.

In all of this the plaintiff not only acquiesced but actively

assisted by release of his lien upon parcels of the land from time to time, without which the scheme could not have been carried out.

It is said that Kemmerer (meaning as I understand it, Daniel) was troublesome and impeded the transactions, and that the scheme was the only way to facilitate a settlement. It may be that the actions of Kendall, and the participation of Brooke in them, are susceptible of an honest explanation, but if so, it ought to be made to a jury, for as the case now appears explanation is badly needed.

> The order discharging the rule to open judgment is reversed, the rule to open judgment made absolute, and the record remitted for further proceedings ; so much of the fund in court as may be applicable to this judgment to abide the final judgment.

A motion for a re-argument subsequently made was refused May 27, 1889.

OPINION, MR. JUSTICE MITCHELL :

On the case as presented we see no reason to change the views heretofore expressed. Should the appellant fail to substantiate his version of the transactions, or should the facts appear in any way materially different from what they are now presented, the result may be different. All we now decide is that appellant has made out such a prima facie case as entitles him to a hearing.

Re-argument refused.